IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:24-cr-66 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Rejecting Rule 11(c)(1)(C) Plea |
| Nicholas Dryden, a/k/a "Niko Bellic", | : | Agreement and Denying Motion for |
| | : | Reconsideration |
| Defendant. | : | |

On January 29, 2026, this Court reopened the September 30, 2025 Sentencing Hearing of

Defendant Nicholas Dryden.  Dryden entered into a Federal Rule of Criminal Procedure

11(c)(1)(C) Plea Agreement in which he agreed to plead guilty to one count of conspiracy to

create and distribute animal crush videos, in violation of 18 U.S.C. §§ 371, 48(a)(2), (a)(3), and

(b) and one count of creation of animal crush videos, in violation of 18 U.S.C. §§ 48(a)(2) and 2.

The Plea Agreement established an 84-month agreed term of imprisonment, which was six

months above his advisory United States Sentencing Guideline range of 63 to 78 months of

imprisonment.

At the Sentencing Hearing, the Court orally rejected the parties' Rule 11(c)(1)(C) Plea

Agreement (Doc. 65) and subsequently denied Defendant's Motion for Reconsideration (Doc.

88).  As this involves a relatively novel area of the law concerning animal crush videos, the

Court will memorialize its decision now in hopes of providing guidance to courts facing similar

decisions in other cases.

I.     **BACKGROUND**

A.  **Indictment**

On June 5, 2024, Dryden, along with his co-defendants Giancarlo Morelli and Phillip Colt Moss, were charged in an eight count Indictment involving the creation and dissemination of "animal crush" videos.  (Doc. 1.)  As set forth in the Indictment, the term "animal crush" is conduct in which one or more living non-human mammals, birds, reptiles, or amphibians were purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury (as defined in 18 U.S.C. § 1365 and including conduct that, if committed against person and in the special maritime and territorial jurisdiction of he United States, would violate 18 U.S.C. §§ 2241 or 2242 (relating to aggravated sexual abuse and sexual abuse, respectively)). 18 U.S.C. §§ 48(f).  The animal crush videos in this case involve the torture, genital mutilation, and murder of baby monkeys.

The Indictment charged the following crimes: Count 1: conspiracy to create and distribute animal crush videos in violation of 18 U.S.C. § 371; Counts 2–4: production, distribution, and receipt of visual representation of sexual abuse of children by Dryden in violation of 18 U.S.C. § 1466A(a) and 18 U.S.C. § 2; Count 5: creation of an animal crush video by Dryden in violation of 18 U.S.C. § 48(a)(2) and 18 U.S.C. §2; and Count 6: distribution of an animal crush video by Dryden in violation of 18 U.S.C. § 48(a)(3) and 18 U.S.C. § 2.  Counts 7– 8 charge Dryden's co-defendants with one count each of distribution of animal crush video in violation of 18 U.S.C. § 48(a)(3) and 18 U.S.C. § 2.

Morelli entered into a Plea Agreement in which he pled guilty to conspiracy to create and distribute animal crush videos in violation of 18 U.S.C. §§ 371, 48(a)(2), (a)(3), and (b), and was sentenced to 48 months of imprisonment  on October 7, 2025.  (Doc. 84.)  Moss died on

November 13, 2024 during the prosecution of this case, and as such the Court granted the

Government's motion to abate the prosecution and dismiss the Indictment as to Moss. (Doc. 67.)

### B. Dryden's Rule 11(c)(1)(C) Plea Agreement

On March 7, 2025, Dryden entered into a Rule 11(c)(1)(C) Plea Agreement, in which he

agreed to plead guilty to Count 1 of the Indictment, conspiracy to create and distribute animal

crush videos in violation of 18 U.S.C. § 371, and Count 5 of the Indictment, creation of animal

crush videos in violation of 18 U.S.C. § 48(a)(2). (Doc. 63.) Pursuant to Section 7 of the Plea

Agreement, the parties agreed that an Agreed-Upon Sentence set forth in Section 8 of the Plea

Agreement would be the appropriate disposition of the case and would be binding if the Court

accepts the Agreement. (*Id.* at PageID 631.)

> **Rule 11(c)(1)(C) Plea:** Pursuant to Rule 11(c)(l)(C) of the Federal Rules
> of Criminal Procedure, the Government and Defendant DRYDEN agree
> that the specific sentence outlined in Paragraph 8 of this Agreement is the
> appropriate disposition of this case, and that these recommendations shall
> bind the Court if this Agreement is accepted by the Court.
>
> The Defendant understands that the Court may accept this plea agreement,
> reject it, or defer a decision until the Court has reviewed the presentence
> investigation report. Defendant understands that if the Court accepts this
> Agreement, the Court will advise Defendant that it will impose the
> sentence set forth below, at Paragraph 8. Defendant further understands
> that if the Court rejects the Agreement, (a) the Court will advise
> Defendant personally on the record that it has rejected the Agreement and
> that the Court will not be bound by the Agreement; (b) the Court will give
> Defendant the opportunity to withdraw the guilty plea; (c) the Court will
> advise Defendant that, if he persists in his plea of guilty, the Court may
> impose a sentence less favorable to Defendant than that agreed to in the
> Agreement; and (d) the Government will not be bound by any of the
> provisions of the Agreement and may seek identical and additional
> charges.
>
> Defendant understands that the Court will consider the factors set forth in
> 18 U.S.C. § 3553(a) in determining whether to accept this Agreement.
> Defendant agrees and understands that the Court will also consult and take
> into account the United States Sentencing Guidelines ("Sentencing

> Guidelines" or "U.S.S.G.") in determining whether to accept this Agreement. Defendant agrees and understands that the Sentencing Guidelines are not mandatory or binding on the Court but are advisory in nature.

(*Id*.)  The language of the Plea Agreement tracks Federal Rule of Criminal Procedure 11(c)(5) which outlines the procedure for a Court to reject a Rule 11(c)(1)(C) Plea Agreement.  Under Section 8 of the Plea Agreement, the parties agreed that a sentence of 84 months of incarceration followed by three years of supervised release was an appropriate sentence in this case.  (*Id*.)

### C.  Conditional Acceptance of Rule 11(c)(1)(C) Plea Agreement

The Honorable Douglas R. Cole accepted Dryden's guilty plea to Counts 1 and 5 of the Indictment on March 11, 2025, although it deferred acceptance of the Plea Agreement pending completion and review of the Presentence Report.   (Doc. 64.)   Count 1 is a Class D felony, which subjects Dryden to not more than five years' imprisonment, a $250,000 fine, a period of supervised release of up to three years, and a $100 special assessment.  Count 5 is a class D felony, which subjects Dryden to not more than 7 years' imprisonment, a $250,000 fine, a period of supervised release of up to 3 years, and a $100 special assessment.

At the Change of Plea Hearing, the Court engaged in a direct colloquy with Defendant about the nature of its conditional acceptance of his Plea Agreement:

> THE COURT: Are you aware the Court is not required to accept the plea agreement that you have just entered and may reject it?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: For example, as we've already discussed to some extent, the plea agreement contains what it refers to as an agreed sentencing disposition. Do you understand that the Court is not bound to find that the sentence set forth in the plea agreement is appropriate but could determine that a more severe sentence is warranted?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: In other words, the Court might conclude that a sentence of 84 months' imprisonment is not the appropriate sentence here and that a sentence longer than 84 months is warranted; do you understand that, sir?
> THE DEFENDANT: Yes, Your Honor.

> THE COURT: Now, if that were to happen, in other words, if the Court were to reject the sentence in the plea agreement, you would have an opportunity to withdraw your plea agreement at that time. But for today's purposes, I just want to make sure that you understand the Court is not bound to impose that sentence; do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Now, if the Court were to reject the plea agreement, as I noted, you would have a right to withdraw your plea, but you would also have another option.  If the Court were to reject the plea agreement, you would have a right to continue maintaining your guilty plea rather than withdrawing it. But if you were to choose that path, the Court could select a sentence that is less favorable than the sentence set forth in the proposed plea agreement; do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you have any questions about that?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Do you have any remaining questions about your plea agreement of any kind whatsoever that you would like to have addressed before we move forward?
> THE DEFENDANT: No, Your Honor.

(Doc. 90 at PageID 984–85.)  The Court made very clear at the time of conditionally accepting Dryden's Plea Agreement that it was not bound to accept the 84-month sentence, and Dryden stated he understood that possibility.

### D. Dryden's United States Sentencing Guideline Range

On April 14, 2025, this case was transferred to the docket of the Undersigned.  (Doc. 68.) The United States Probation Officer prepared the Presentence Investigation Report and calculated Dryden's advisory United States Sentencing Guideline range to be 63–78 months of imprisonment.  (Doc. 74.)  The calculations, in which Dryden is found to have a base offense level of 24 and a criminal history category of III, are as follows.

Dryden pled guilty to one count of conspiracy to create and distribute animal crush videos, a Class D Felony, in violation of 18 U.S.C. §§ 371, 48(a)(2), (a)(3), and (b) and one count of creation of animal crush videos, a Class D felony, in violation of 18 U.S.C. §§ 48(a)(2) and 2.  Pursuant to U.S.S.G. § 3D1.1(a)(1), when a defendant has been convicted of more than

one count, the Court shall group the counts resulting in conviction into distinct groups of closely related counts by applying the rules of U.S.S.G. § 3D1.2. Since the counts involve the same victim (society) and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, they are grouped pursuant to U.S.S.G. § 3D1.2(b). Additionally, Application Note Four states when one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b). This provision applies in this case. As such, Counts 1 and 5 are grouped in accordance with U.S.S.G. § 3D1.2(b).

Pursuant to U.S.S.G. § 3D1.3(a), in the case of counts grouped together pursuant to U.S.S.G. §§ 3D1.2(a) through (c), the offense level applicable to the group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the group, *i.e.*, the highest offense level of the counts in the group. Both counts of conviction are governed by U.S.S.G. § 2G3.1; therefore, this Guideline was utilized to calculate the offense level. Count Five is the most egregious count and was therefore utilized for the Guideline calculation.

U.S.S.G. § 2G3.1 governs a violation 18 U.S.C. § 48(a)(2). The base offense level is 10 in accordance with U.S.S.G. § 2G3.1(a). Pursuant to U.S.S.G. § 2G3.1(b)(1)(A), five levels are added because Dryden distributed animal crush videos in exchange for pecuniary gain. Pursuant to U.S.S.G. § 2G3.1(b)(3), two levels are added because the offense involved the use of a computer or an interactive computer service. In accordance with U.S.S.G. § 2G3.1(b)(4), four levels are added because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Dryden served as the organizer or leader in the offense; therefore, four levels are added in accordance with U.S.S.G. § 3B1.1(a). Two levels are added

pursuant to U.S.S.G. § 3B1.4 because Dryden used a minor to commit the offense.  The adjusted offense level is 27.  Dryden admitted his involvement in the offense and accepted responsibility for his criminal conduct.  The offense level, therefore, is decreased by three levels, according to U.S.S.G. §§ 3E1.1(a) and (b), resulting in an offense level of 24.  Dryden has six criminal history points, establishing a criminal history category of III.  Based on an offense level of 24 and a criminal history category of III, the advisory United States Sentencing Guideline imprisonment range is 63 to 78 months.

### E. Sentencing

On September 30, 2025, Dryden appeared in Court for his Sentencing Hearing.  The Court accepted the Presentence Investigation Report as part of the sentencing facts of this case, to which the parties had no objection.  The Court also discussed the 18 U.S.C. § 3553 sentencing factors, the United States Sentencing Guideline range applicable to the counts to which Dryden pled guilty and began mitigation and allocution.  However, the Court continued the Sentencing Hearing after advising it could not accept the terms of the Plea Agreement, citing concern with the agreed sentence.  (Transcript, Doc. 87.)  At the request of Defendant, the Court continued the Hearing, and Defendant followed with a Motion for Reconsideration, to which the Government filed a Response.  (Docs. 88, 89.)  Defendant argues in his Motion for Reconsideration that the Court improperly rejected the Plea Agreement and that not accepting it would result in sentencing disparities.

The Court reopened the Sentencing Hearing on January 29, 2026, at which it set forth its reasons for rejecting the Plea Agreement and provided Dryden with an outline of his options.  At the conclusion, Dryden requested a continuance for the purpose of finalizing an Amended Plea Agreement.  Because of the novelty of the situation and particular crime, the Court is

memorializing its decision herein.  For the reasons that follow, the Court is unable to accept the Rule 11(c)(1)(C) Plea Agreement and denies Defendant's Motion for Reconsideration.

## II.    STANDARD OF LAW

Under Federal Rule of Criminal Procedure 11, the government and defendant can reach a plea agreement.  A plea agreement made under Rule 11(c)(1)(C) allows the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case."  Fed. R. Crim. P. 11(c)(1)(C).  If the district court accepts a Rule 11(c)(1)(C) plea agreement, then the parties' agreed-upon sentence or sentencing range "binds the court."  *Id.*  But the district court can reject a Rule 11(c)(1)(C) plea agreement if it: (1) informs the parties of its intentions, (2) advises the defendant that it "is not required to follow the plea agreement," (3) gives the defendant an opportunity to withdraw his guilty plea, and (4) cautions the defendant that it could impose a sentence harsher than contemplated by the plea agreement if the defendant does not withdraw his guilty plea.  *United States v. Lanier*, No. 25-3059, 2025 WL 3244491, at *2 (6th Cir. Nov. 20, 2025) (citing Fed. R. Crim. P. 11(c)(5)).

District courts have broad discretion in deciding whether to accept or reject plea agreements.  *See Santobello v. New York*, 404 U.S. 257, 262 (1971).  When the government and the defendant agree to a sentence or sentencing range in a Rule 11(c)(1)(C) plea agreement, the district court has an "independent obligation" to ensure that the recommended sentence is "'sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion) (citing 18 U.S.C. 3553(a)).  To ensure the parties' agreed-upon sentence is sufficient, district courts "must consider the Sentencing Guidelines."  *Hughes v. United States*, 584 U.S. 675, 682 (2018).   The Court may not accept a plea agreement that includes a specific sentence unless "the agreed

sentence is within the applicable guideline range," or it is outside that range "for justifiable reasons" that are specifically set out. *Id.* (quoting U.S.S.G. § 6B1.2(c)).

"[A] defendant has 'no absolute right to have a guilty plea accepted,' [but] a court must exercise 'sound judicial discretion' in determining whether to reject a plea.'" *United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). When a district court rejects a plea agreement, it must "explain why" by articulating a "sound" explanation for its decision to foster the exercise of judicial discretion. *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022) (citing *United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990) and *Cota-Luna*, 891 F.3d at 647).

The Sixth Circuit has held that a district court may reject a plea agreement when the agreement does not adequately reflect the seriousness of the offense, unduly cabins the judge's sentencing discretion, or is contrary to the sound administration of justice. *In re United States*, 32 F.4th at 594–95 (citations omitted). The district court "must give every case independent consideration and base its decision on the specific plea agreement before it." *Id.* Generalized policy grounds and findings that are clearly not in accord with the facts of the case do not justify rejection of a plea agreement. *Id.* at 595.

## III. ANALYSIS

### A. Agreed Sentence Does Not Adequately Reflect the Seriousness of the Offenses and Too Greatly Restricts Judicial Discretion

The Court is unable and unwilling to accept the terms of Dryden's Plea Agreement for two primary reasons. Neither the terms of the Plea Agreement nor Dryden's United States Sentencing Guideline range sufficiently reflect the seriousness of the offenses. Further, the terms improperly constrain the Court's discretion, which is much needed in this case.

### 1. Seriousness of the Offenses

The seriousness of the offenses is not fully captured by the United States Sentencing Guideline range for Dryden, an aspect of the proposed agreed sentence the parties recognize by agreeing to an above-Guideline range sentence.  Dryden was charged with six crimes in the pending eight-count Indictment, and he agrees to plead guilty to two of those crimes pursuant to the Plea Agreement.  The Court weighs the seriousness of the offenses charged—and there is overwhelming evidence presented in the Presentence Investigation Report on all six charges pending against Dryden—against the parties' arms'-length agreement as to two of those offenses and the agreed sentence on those two charges.

In exchange for pleading guilty to Counts 1 and 5, the Government is agreeing to move to dismiss Counts 2, 3, 4, and 6 of the Indictment.  By doing so, Dryden is not being sentenced on these dismissed charges, but such evidence is still relevant conduct under U.S.S.G. § 1B1.4, which is information concerning the background, character and conduct of the defendant, unless prohibited by law.  *See* 18 U.S.C. § 3661.  Counts 2, 3, and 4 charge Dryden with production, distribution, and receipt of visual representations of sexual abuse of a minor on March 12, 2023, March 25, 2023, and April 20, 2023, respectively.  (Doc. 1 at PageID 24–25.)  Pages 4 and 5 of the Presentence Investigation Report describe in detail the videos of abuse of children that were produced with respect to those charges.  (PSR, Doc. 74 at PageID 771–72.)  Count 6 charged Dryden with distributing an animal crush video between March 12, 2023 and April 22, 2023. (Doc. 1 at PageID 26–27.)  Dismissing these charges with this type of evidence is a significant concession in accepting the terms of the Plea Agreement.  Part D of the Presentence Investigation Report calculated that if convicted of all of the Counts in the Indictment, Dryden would have been subjected to a five-year mandatory minimum sentence on Counts 2, 3, and 4,

and he would have been exposed to an advisory United States Sentencing Guideline range of 324 to 405 months of imprisonment.  (Doc. 74 at PageID 798.)

As to the two crimes to which Dryden agreed to plead guilty, the agreed sentence does not reflect the seriousness of his criminal conduct, the evidence for which is horrific and overwhelming.  This type of animal crush crime is relatively novel as there are not many similar cases in this district or nationwide.  Dryden's advisory sentencing range under the United States Sentencing Guidelines for these two crimes is 63 to 78 months of imprisonment, and the parties asked the Court to accept an agreed sentence of 84 months of imprisonment, which is the statutory maximum for Count 5 and a modest six months above his United States Sentencing Guideline range.

The statutory maximum for both charges together is 144 months of imprisonment.  While the Plea Agreement acknowledges this is a case that deserves an above-Guideline sentence, the Plea Agreement *also* significantly cabins the Court's discretion in considering *how much* of a variance or deviation from the Guideline range is warranted in this case.  The Court is within its discretion to reject a plea agreement where the agreement does not adequately reflect the seriousness of the offense, cabins the judge's sentencing discretion, or is contrary to the sound administration of justice.  *See In re United States*, 32 F. 4th at 594–95.  Here, the modest upward variance implied by the agreed sentence does not account for the particularly horrendous conduct at issue here as well as factors outside of the consideration of the United States Sentencing Guidelines.

When imposing a sentence, the Court considers the 18 U.S.C. § 3553(a) factors, which include: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3)

the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553.

The Court had never heard of the dark and sadistic nature and circumstances of animal crush crimes until this case. Dryden was masterminding the creation of the horrific videos, directing a minor in Indonesia to mutilate, torture, and murder monkeys. The videos were so cruel—Dryden actually directed the minor to be "nice" to these baby monkeys—which had been separated from their mothers, by feeding them or dressing them in clothing before then inflicting torture and often murdering the monkeys. (*See* Doc. 74 at PageID 778.)

Moreover, the minor creating these videos, although a participant, is also a victim here. As the Government argues in its Sentencing Memoranda, the Court should consider the psychological harm suffered by VO1, the minor Dryden conscripted into creating the videos. (Doc. 79 at PageID 818.) The Government points out in its Sentencing Memorandum that Dryden knew the videographer, who was a 17-year-old Indonesian, was poor and capable of being manipulated into performing acts of grotesque violence for relatively small sums of money. (*Id*. at PageID 819.) That Dryden preyed upon a minor in an impoverished country to create these videos and actually do the torturing and murdering of the monkeys is a disturbing additional aspect of this case.

The Presentence Investigation Report describes that Dryden served as the creator and administrator to several online groups via the platform Telegram, which is a Russian cloud-based application that allows users to send messages, photos, videos and files. (Doc. 74 at PageID 775.) Dryden crowd-sourced ideas for acts of torture from other members of the group. (*Id*. at PageID 776.) Dryden utilized the online groups to create, distribute, and discuss obscene videos

12

of monkeys being tortured. He collaborated with a minor who resided in Indonesia and was 17 years old at the time of the offense. Dryden commissioned this minor to make multiple videos depicting monkeys being tortured. He would receive the videos and then distribute them to various group members, including his co-defendants.

The Presentence Investigation Report describes the animal torture videos and communications about their creation in graphic details. (*Id*. at PageID 774–781.) The messages Dryden sent demonstrate he was well aware of his conduct, that he commissioned a minor to engage in extreme violent and sadistic behavior for pecuniary gain, and that he was heartless about the wellbeing of the animals that were tortured and murdered. It is also clear that this segment of the population receives gratification and joy from this type of conduct, which is incredibly disturbing. The following paragraphs, taken from the Presentence Investigation Report, describe some of this conduct:

47. On April 14, 2023, Dryden asked VO1 to carry out certain acts of torture in the next video. Specifically, Dryden requested that VO1 leave one of the monkeys without a leg and let him crawl to the other monkeys. He also stated, "And hold the other one, be very nice to him feed him and dress him in yellow clothes while the other monkey crawls without a leg. After cutting off his leg, burn the wound with a lighter and throw salt on it." Dryden also requested the videos be lengthy and include older monkeys.

48. Dryden received another video from VO1 on April 16, 2023. The video was approximately 30 minutes long. The video depicted various acts of torture upon a monkey, including burning the genitals and anus of the monkey. Dryden sent Morelli an animal crush video the following day.

* * *

52. Throughout April 19, 2023, Dryden provided other various suggestions of torturous acts to VO1 that they could utilize for the next video. On April 20, 2023, Dryden received a 33 minute and 23 seconds long video electronically from VO1. The video depicted VO1 engaged in various acts of torture with a baby monkey. The baby monkey was tied to a cage while VO1 burned its genitals and anus repeatedly while it was tied to the cage, the monkey's head was burned and its genitals were cut with scissors. VO1 also slammed the monkey's head into the

side of the wire cage, ultimately killing the baby monkey. Dryden then distributed the animal crush video to Morelli.

(*Id*. at PageID 778–79 (¶¶ 47, 48, 52).)

In addition to the fact that Dryden's criminal conduct included exploiting a minor to torture animals, the nature of the torture itself is extremely disturbing. All animals deserve protection, but monkeys and baby monkeys are unique in how similar they are to humans, in that they can experience emotion and pain and are very intelligent. The monkeys here were often baby monkeys separated from their mothers, who are clearly helpless and experiencing horrendous suffering.

All of these aspects add up to a crime that is beyond the pale of what one may think of in terms of creating an animal cruelty video. This was repeated, sadistic, horrendous behavior murdering animals close in relation to humans, directing a minor to do this, and repeatedly doing this. As was outlined in the Presentence Investigation Report in paragraphs 57 and 58, law enforcement located over 400 videos depicting monkey torture associated with Dryden's email accounts. (*Id*. at PageID 780.) In addition to those videos, there were hundreds more associated with Dryden's email accounts that did not include genital mutilation but still depicted monkey torture. (*Id*.) The conduct in these additional videos was also heinous in nature and several were quite lengthy, up to forty minutes. (*Id*.) The content Dryden procured, directed, and shared depicted horrendous instances of abuse.

Because the offense involved animals, a victim enhancement was not appropriate under the United States Sentencing Guidelines. But monkeys are a far cry from, for instance, a small lizard or another animal. They are remarkably similar to humans but had no voice to protect themselves here. The fact that the monkeys here were dressed in yellow dresses contributes to the disturbing nature of this offense and demonstrates the parallels between monkeys and

14

humans. The videos were generally quite lengthy when considering the fact that animals were being tortured during that timeframe. And it is easy to see in this instance that the propensity to abuse animals has frequently been linked to the potential for other acts of violence.

The United States Sentencing Guidelines also do not account for the length of time the monkeys endured the torturous acts carried out by the minor involved. Nor do the United States Sentencing Guidelines account for the number of videos associated with Dryden, which involved over 400 videos depicting monkey torture with genital mutilation alone. Based on the totality of the nature and characteristics of the offense, a greater sentence is necessary in this case, and the agreed sentence simply does not account for the extreme depravity and seriousness of this conduct.

The Court has considered Dryden's nature and characteristics, particularly his difficult upbringing in light of his parents' addiction issues. (*Id*. at PageID 792–93.) Dryden also struggled with addiction to methamphetamines and other mental health illnesses. (*Id*. at PageID 795–96.) These types of considerations unfortunately are relatively common amongst defendants in federal court. Although these aspects of the Defendant's history and characteristics are of course a consideration, they do little to mitigate the extremity of his behavior.

### 2. Judicial Discretion

Because of the aforementioned considerations, the United States Sentencing Guideline range for Dryden in this case is not adequate and the Court must be able to use its discretion to impose an upward variance. The terms of the Plea Agreement too greatly limit the Court's discretion with respect to a variance. Dryden contends that the Court is ignoring the advisory Guideline range when the Court stated that it wanted to be able to sentence him on "both" counts

at his initial Sentencing Hearing.  The parties agreed that a variance was warranted in this case on the basis of the severity of the conduct.  But what level of a variance is warranted in this case is a matter of discretion, and the Plea Agreement impedes upon the Court's ability to exercise needed discretion in this particularly troubling case.  The statutory maximum on both Counts 1 and 5 amounts to 144 months.  The advisory United States Sentencing Guidelines group the Counts 1 and 5 together and essentially reflect the greater sentence of the two crimes to create the advisory sentencing guideline range in this case.  From there, the parties added six months to the high end of Dryden's guideline range to reach the agreed sentence of 84 months.  A district court judge, absent a plea agreement impeding that ability, has discretion to deviate from the advisory sentencing range and sentence a defendant to the statutory maximum penalty.  Here, the parties remove that ability, and it too greatly impedes upon the Court's discretion to deviate from the advisory United States Sentencing Guidelines in this case.

### B.  Rejecting the Agreed Sentence Would Not Create Sentencing Disparities

Dryden also argues that rejecting an 84-month sentence in this case would amount to sentencing disparities in animal crush cases.  The Court does not agree.  There is a limited number of similar cases of monkey torture animal crush cases involving a minor.  One such case is that of Dryden's co-defendant, Giancarlo Morelli.  Morelli directed animal torture videos in this case.  Morelli pled guilty to one count of conspiracy to create and distribute animal crush videos, in violation of 18 U.S.C. § 371, for which the maximum sentence was five years of imprisonment.  Morelli's sentencing guideline range was 27 to 33 months of imprisonment, although the Court sentenced him to 48 months of imprisonment due to the egregious nature of the case.  (Docs. 69, 75, 84, 85.)  That sentence was within but lower than the statutory maximum penalty for the crime to which he pled guilty.  Given that Dryden is pleading guilty to

multiple counts, the Court does not view a significantly higher sentence as disproportionate to Morelli's sentence for pleading guilty to one count of lesser, but still horrible and related, conduct.

What few comparable cases the Court located were available in the format of transcripts and by reviewing other opinions related to the underlying sentencing. *See United States v. Bedra*, No. 2:24-cr-048-EAS-1, Docs. 26, 30 (S.D. Ohio Oct. 11, 2024) (CM/ECF); *United States v. Vanwoert*, No. 3:22 CR 618-JRK, 2025 WL 2549300 (N.D. Ohio Sept. 4, 2025) (CM/ECF); *United States v. David Noble*, No. 6:23-cr-181-MC-1, Doc. 35, 39 (D. Ore. April 24, 2024), *aff'd*, No. 24-2723, slip. op. (9th Cir. June 9, 2025) (CM/ECF). Although limited in number, these cases are unified in their description and treatment of this type of criminal conduct as extreme-end behavior.

In *United States v. Bedra*, over which the Honorable Edmund A. Sargus presided, the defendant pled guilty to conspiracy to create and distribute animal crush videos and distribution of animal crush videos. *United States v. Bedra*, Case No. 2:24-cr-048, Doc. 30 (S.D. Ohio Oct. 11, 2024) (CM/ECF). With a guideline range of 37–46 months, Judge Sargus imposed an upward variance of 8 months for a 54-month sentence. *Id.* at PageID 375, 404. The defendant in *Bedra* had no criminal history, and the plea agreement did not involve an agreed sentence as this case does. *Id*. at PageID 398. In *Bedra*, the Government advocated for the Court to impose a sentence that exposes this type of harmful conduct and tells society that this conduct will be punished seriously. *Id*. at PageID 393. The Government also highlighted the importance of general deterrence, because unfortunately there is a dark market driven by demand, a factor here as well. *Id*. at PageID 394. Because of these well-articulated concerns, the Court imposed a meaningful 8-month variance in a lower-Guideline case. Similarly, the same considerations

apply here and call for a significant sentence.  However, an 84-month sentence for Dryden's conduct is not a strong enough sentence for general deterrence purposes and in comparison to the similar *Bedra* case.

The Court appreciates the differences between this case and *United States v. Vanwoert,* from the Northern District of Ohio, over which the Honorable James R. Knepp II presided. *United States v. Vanwoert*, No. 3:22 CR 618, 2025 WL 2549300 (N.D. Ohio Sept. 4, 2025).  The criminal conduct in Vanwoert was more horrific and included torture of animals as well as rape of a toddler.  *United States v. Vanwoert*, No. 3:22 CR 618, Doc. 71 (N.D. Ohio April 4, 2025) (CM/ECF).  The Court accepted a plea agreement with a stipulated range of 78 to 97 months of imprisonment and sentenced the defendant to the maximum permitted sentence of 97 months of imprisonment on multiple charges.  *Id*. at PageID 2002.  At sentencing, Judge Knepp stated that he would have sentenced the defendant to a much greater sentence if the parties did not have a plea agreement limiting his ability to impose the maximum statutory penalty:

> [I]n the absence of this Plea Agreement, I'd be feeling constrained by the statute. I'll just say that. And I'll say it again. In the absence of that Plea Agreement, I fully expect that I would have sentenced you to 144 months and perhaps been sad that that was all I had.

*United States v. Vanwoert*, No. 3:22 CR 618, 2025 WL 2549300, at *6 (N.D. Ohio Sept. 4, 2025) (citing Sentencing Transcript, Doc. 71 at 34–35).  Here, unlike in *Vanwoert*, the Court rejects the Plea Agreement because it too greatly constrains the Court's discretion.

Finally, in *United States v. Noble*, a case from the District of Oregon over which the Honorable Michael J. McShane presided, the defendant conspired with others to fund the production of torture, mutilation, and murder of monkeys and similarly was the leader of an online forum.  *United States v. Noble*, No. 6:23-cr-181-MC-1, Doc. 39 (D. Ore. April 24, 2024) (CM/ECF), *aff'd*, No. 24-2723, slip. op. (9th Cir. June 9, 2025) (CM/ECF).  There, the defendant

pled guilty to one count of conspiracy to engage in animal crushing and to create and distribute animal crush videos.  *Id*. at slip. op. 1.  The defendant in Noble was not the leader of the animal crush video enterprise, as the leader had yet to be identified at the time of sentencing.  *United States v. Noble*, No. 6:23-cr-181-MC-1, Doc. 39 at 15 (D. Ore. April 24, 2024) (CM/ECF).  At sentencing, the Government described the facts of the video creation, which were strikingly similar to how the videos were created in this case—and emphasized that the creators of the animal torture videos were commissioning individuals without much money to execute and film the torture in Indonesia.  *Id*. at 28–31.  An important difference, however, is that a minor was not involved in making the monkey torture videos in the *Noble*.  The Government in the *Noble* case questioned whether these individuals would have engaged in this criminal behavior had it not been for consistent payments by individuals here in the United States, which also is a consideration in this case.  *Id*.  The Government argued that the normalization of torture and murder of these animals that these videos bring about should not be tolerated by any court.  *Id*. at 33.

Judge McShane described the conduct as "the most calculated cruelty I've ever seen in my entire career" and stated:

> I've never seen anything like this in terms of planning, the thinking through, the follow through, to do something that—for just the prurient interest of causing pain and death to another creature, and not just quick pain and death, but slow torture. It's really difficult to understand, but the one thing that's very clear to me is that there are groups of people out there that find great joy in this kind of activity, you know, as hard as it is to imagine.  And that group needs to understand that it simply cannot continue and the court system will not tolerate it.

*Id*. at 35–36.  On that basis, Judge McShane departed upward for a sentence of 48 months of imprisonment when the defendant's advisory Guideline range was 21 to 27 months of imprisonment.  *Id*. at 36–37.  Judge McShane stated that he did not think the level of conduct

was contemplated by the Sentencing Guideline Commission when it formed the advisory United States Sentencing Guideline range for this particular offense.  *Id.*  He also found the defendant's conduct to be extreme as defined in Section 5K2.8 of the United States Sentencing Guideline Manual.[1]  *Id.*

In sentencing, the judge must consider the individualized facts and circumstances of the case, and the facts are always unique.  Under this set of facts, the multiple crimes to which Dryden has pled guilty, with this particular Defendant, an 84-month sentence is not acceptable in light of my consideration of the § 3553(a) sentencing factors.  The agreed sentence does not reflect the seriousness of the criminal conduct.  The Court cannot accept the Plea Agreement as it too tightly constrains the Court's ability to exercise discretion in fashioning an appropriate sentence, and doing so does not create sentencing disparities.

The Court whole-heartedly agrees with Judge McShane that the advisory Guideline range contemplated for this type of extreme-end behavior in creating animal crush videos does not adequately contemplate this type of torture, and the sentence contemplated does not result in a sufficiently deterrent or punitive sentence.  There is a community that is continuing to engage in this depraved type of animal torture, and this community must understand that this behavior will be seriously punished.  For these reasons, the Court will exercise its needed discretion to reject the Rule 11(c)(1)(C) Plea Agreement.

## IV.    CONCLUSION

For the reasons stated herein and on the record, the Court rejects the Rule 11(c)(1)(C) Plea Agreement.  The Defendant was colloquied on his options for proceeding at the Hearing on

---

[1] This provision no longer part of the Sentencing Manual effective November 1, 2025.

January 29, 2026. At the request of the Defendant, the matter is continued while Defendant

continues plea negotiations with the Government.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge